Meadville Area School District, Appellant, *v.*
Department of Public Instruction.

Argued January 4, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

498

*George J. Barco,* with him *Barco and Barco,* and *Burgwin, Ruffin, Perry & Pohl,* for appellant.

*John D. Killian, III,* Deputy Attorney General, with him *Anne X. Alpern,* Attorney General, for appellee.

OPINION BY MR. JUSTICE COHEN, March 22, 1960:

Plaintiff School District authorized its officials to lease from the Meadville Area School Authority a new senior high school building which the Authority was to erect. The School District filed due notice of its action with the defendant Department, and requested approval to proceed with said project. On December 21, 1955, defendant Department approved the project, without provision for any reimbursement by the Commonwealth. Subsequently, on March 22, 1956, the legislature enacted Act No. 417, P. L. 1315, 24 PS §§25-2572, 25-2574 to 25-2580, effective immediately as an amendment to the Public School Code, Act of March 10, 1949, P. L. 30, which authorized the Commonwealth to make rental reimbursement for school building projects, based on a statutory formula, to School Districts for leases approved by the Department of Public Instruction. The Act provided that no payment was to be made *"unless* such lease . . . is approved by the Department of Public Instruction." Section 2576(a). (Emphasis supplied).

On May 7, 1956, plaintiff submitted to defendant Department a duly executed copy of the agreement of lease for the defendants' approval. Under the lease agreement, plaintiff became obligated to pay the School Authority, during the term of each school year, an annual rental of $150,000 for the building, payable in two semi-annual payments, the first payment due on September 15, 1956, and the second on March 15, 1957. For the 1956-57 school year, plaintiff did pay the School Authority $75,000 on September 15, 1956, and $75,000 on March 15, 1957.

Section 2577(a) of the Act empowered the Superintendent of Public Instruction during the school year 1956-57 to approve for rental reimbursement projects the reimbursable cost of which, when added to the reimbursable cost of projects approved in previous years, would not exceed in the school year 1956-57 the aggregate sum of $725,000,000. On February 4, 1957, several months after the first payment by plaintiff to the School Authority was due and made, defendant Department formally approved the agreement of lease for rental reimbursement. Plaintiff School District, upon approval of said lease, became entitled on the basis of the statutory formula to rental reimbursement of $50,-000 per year. Later, during 1957, the Department granted the plaintiff reimubrsement in the sum of $25,-000, both plaintiff and defendants treating this sum as reimbursement for the rental payment made on March 15, 1957.

Plaintiff, in this action, seeks a writ of mandamus to compel the Department of Public Instruction, the Auditor General and the State Treasurer to reimburse plaintiff in the sum of $25,000 toward the $75,000 lease payment made by plaintiff on September 15, 1956. Defendants, acting in accordance with opinions of the Attorney General, have taken the position throughout that plaintiff is not entitled to the disputed sum because

the rental payment was made prior to February 4, 1957, the date of formal approval by defendant Department of plaintiff's agreement of lease. Defendants filed preliminary objections to plaintiff's complaint contending (a) that the court lacked jurisdiction in mandamus, and (b) that the complaint did not aver facts which create a legal right to recovery. The Court of Common Pleas of Dauphin County entered an order dismissing the preliminary objections relating to jurisdiction, but sustaining the objections as to the complaint failing to state a cause of action. Plaintiff School District has appealed from that order.

There is no question that the court below possessed the requisite jurisdiction to determine whether an extraordinary writ of mandamus should issue. The law is clear that an action of mandamus will lie to compel public officials to perform their duties in accordance with the law. While mandamus will not lie to compel performance of an act which is purely discretionary in character, the writ will issue to require the performance of a purely ministerial duty on the part of a public officer. *Mellinger v. Kuhn*, 388 Pa. 83, 130 A. 2d 154 (1957); *Dechert, Controller of the City and County of Philadelphia v. Commonwealth*, 113 Pa. 229, 6 Atl. 229 (1886); 17 McQuillin, Municipal Corporations (3rd ed.) §51.16.

McQuillin defines a ministerial act as one which a public officer is required to perform upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority. *Id.* at §51.19 Section 2574 of the Act of 1956 provides such mandatory statutory direction for the Department of Public Instruction: ". . . for approved school building projects for which the general construction contract was awarded but for which a lease was not approved by the Department of Public Instruction prior to the effective date

of this amending act, the Department of Public Instruction shall calculate an approved reimbursable rental. . . . Approved reimbursable rental . . . shall consist of . . ." Thereafter, in the subsections of Section 2574, the formula which defendant Department must apply in arriving at the reimbursable rental figure is spelled out. Section 2575 then states, "The Commonwealth shall pay annually to each school district erecting or sharing in the erection of a building or buildings . . . on account of buildings for which the lease is approved subsequent to the effective date of this amending act . . . an amount to be determined . . .," by multiplying another statutory formula by the already determined reimbursable rental.

Once the lease is approved and the annual reimbursable amount is determined, it is clear from reading these sections that there is no discretion left to the public officials. Defendant Department must apply the statutory formulas to arrive at the amount of required payment. Determination of the figures to use in applying the statutory formulas may or may not entail the exercise of discretionary acts. But the Department's duty, after lease approval and determination of the annual reimbursable amount, becomes purely ministerial and as such, is subject to mandamus in the event of nonperformance. When public officials act in an improper manner because of an erroneous interpretation of the law under which they are functioning, as in *Garratt v. Philadelphia*, 387 Pa. 442, 127 A. 2d 738 (1956), mandamus will issue.

We now face the ultimate question, whether defendants' demurrer was properly sustained. As quoted previously, Section 2575 provides, "The Commonwealth shall pay *annually* to each school district . . . an amount to be determined. . . ." (Emphasis supplied). The lower court construed this to mean calendar year.

We believe the lower court was in error in not construing "annually," as used in the statute, to refer to a school year. The Public School Code of 1949, as amended, is literally sprinkled with specific references to the school year and other references that clearly contemplate the same. Use of the word "annually" here can have no other meaning. For example, the language of the very reimbursement provisions here under examination expresses a legislative intention that "annually" refers to a school year. Section 2574.(d), which relates to the calculation of approved rental reimbursement for participating districts, states that: "For purposes of calculating the amount of rental reimbursement the approved reimbursable rental for a school project constructed for two or more school districts *shall annually* be apportioned among the participating districts on the basis of the proportion which the valuation of each district as certified by the state tax equalization board *during the preceding school year* bears to the total valuation of all participating districts." (Emphasis supplied). Also Section 2577(a), which sets the upper dollar limits on defendant Department's approval for reimbursement purposes, sets forth the aggregate amount for approved reimbursable costs of projects in each case by relation to the *school year,* from 1955-56 to 1958-59. And inasmuch as the annual rental payments under such a lease are necessarily on a school year basis so as to conform to the fiscal scheme of a school district, it seems logically to follow that the annual state reimbursement payments would be made on the same basis. The Code as a whole clearly establishes that insofar as financial matters of school districts are concerned, the school year is the pertinent annual period.

Reading the word "annually" as "school year" does not, however, lead us inexorably to only one conclusion.

The real crux of the case involves the aforementioned provision of Section 2576 that no lease reimbursement payment shall be made to a school district *"unless* such lease . . . is approved. . . ."  Defendants urge that we interpret this provision to read "unless *and until* such lease is approved."  Under this reading, since lease approval occurred on February 4, 1957, plaintiffs would not be entitled to rental reimbursement for the lease payment made on September 15, 1956. We cannot agree.  There is no justification for reading into Section 2576 the word "until."  In plaintiff's brief they quote from the Attorney General's Formal Opinion No. 648, dated May 6, 1954, as follows: " 'It seems clear that once the lease is approved, then the project becomes a reimbursable project by statutory mandate. . . . As previously noted, it is the approval of the lease by the Department of Public Instruction that makes the project reimbursable. . . .' "  We concur wholeheartedly in this analysis and hence take the necessary step further.  Once a project has become reimbursable, defendant Department is bound by Section 2575 to "pay annually" the amount required by the statutory formula.  This direction for an annual payment, based as it is upon the school year, entitled plaintiff School District to annual rental reimbursement computed on its lease payments for the entire school year 1956-57.

Defendants argue that "annually" in this context simply means that the amount to which a district is entitled shall be paid in one (annual) payment.  We agree with this also, and point out that if the legislature had intended to provide for payments to be prorated for the period of the school year remaining after lease approval, it would have expressly so provided.  Section 2577(a) established a ceiling of $725,000,000 on the aggregate amount of approved reimbursable costs of

projects up to and including the year 1956-57. It is reasonable to infer that the legislature appropriated the funds necessary to provide reimbursement up to the total amount of the approved reimbursable costs. Since the legislature did not provide for partial or pro-rated payments of the reimbursements, the direction to pay the amount required by the statutory formula must contemplate full reimbursement in one payment when a project has been approved.

The 1956 amendment to the Public School Code was passed with the intention of aiding public schools through participation by the Commonwealth as an active partner in the financing of local school building projects. The legislature certainly must have intended that all school districts whose school authority projects were approved in a given year for rental reimbursement should be treated uniformly in the payment of such reimbursement. Guided as we are by the rule of statutory construction that the provisions of a law shall be liberally construed to effect their objects and to promote justice (Act of May 28, 1937, P.L. 1019, art. IV, §58, 46 PS §558), we hold that defendants must reimburse plaintiff School District for the $25,000 balance to which it is entitled under the statutory formula for the school year 1956-57.

Order reversed. It is ordered that the writ be issued directing defendants to act in accordance with this opinion.

## Cross Trust.

Argued November 12, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and McBRIDE, JJ.